Place number 083471. Maurice Evans v. Union Pacific Railroad. My name is Michael Pollard and I represent the appellant at Union Pacific Railroad. Good morning, Your Honor. It's Brian Schroeder from Nova Selsky Law Offices, along with David Seda, who is the trial counsel in this case for the plaintiff. I'm filling in for Mr. Nova Selsky, who is not able to speak. I'm going to ask that you hold yourselves 15 minutes per side. The appellant may reserve time for rebuttal. Thank you, Your Honor. I'd like to reserve three minutes for rebuttal. This appeal comes before the court from a jury verdict for approximately $5.4 million in an FELA personal injury action tried in the Circuit Court of Cook County. There are a number of issues. I think all of them are kind of interrelated. We obviously think the net result of this verdict is that it is excessive and confiscatory and far outside the range of fair and reasonable compensation, and that that result was occasioned by a number of rulings of the trial court. The first of which, and I think the most important of which, is the court's decision to direct a verdict in favor of the plaintiff on the defendant's affirmative defense of contributory negligence. Because that was a direct verdict of the standard of review for this court, you get to look at it without any deference to the trial court's decision whatsoever. The other factor to consider is that since this is an FELA case, a plaintiff may get to the jury on a showing that employer negligence played any part, even the slightest, in producing the injury. The contrary is also true. A defendant employer is entitled to get to the jury if there is any negligence, even the slightest, of plaintiff's contributory negligence. And remember, in an FELA case, the concept of contributory negligence is a damage reducing factor. So whatever percentage the plaintiff has found to have been at fault gets reduced from the damage. I think we've spent a good deal of time in our briefs talking about the trilogy of Illinois Supreme Court cases, Irhan, Orion, which was actually a vacating on a formal opinion, and Wilson v. Missouri Pacific. What was the negligence of the plaintiff to trigger a contributory negligence theory? Well, the negligence, Your Honor, would have been what was testified to by plaintiff's experts, which is that they thought Mr. Berg, in particular, at page 731 of the record, testified that he did not believe the plaintiff kept the oil filters close to his body when lifting them. There was a Cardinal Safety Rule 75.1, which said that that needed to occur. Plaintiff testified that he did keep the oil filters. And that's what I want the Court to understand here, is that plaintiff, in cross-examination, testified in every conceivable manner that he complied with Cardinal Rule 75.1 in each of his particulars, and that he bent his knees. And therefore, his testimony that he used proper body mechanics in moving this oil filter would really have exonerated the defendant. So they brought in some experts who actually, through their testimony, cast doubt on plaintiff's own version. So they kind of created an alternative causation theory. So defense counsel wanted to say, we believe the evidence will be that plaintiff complied in all respects just as he himself testified. He wanted to say, but if you believe the experts that he couldn't have done that, he didn't do that, then there should be comparative evidence. And so what the net effect of the trial court's ruling here is, is that plaintiff was able to articulate alternative causation theories, and yet defendant was precluded from addressing them. Aren't you kind of creating a custom and a practice argument, or trying to sidestep 75.1 and say that the railroad maybe had its own practice and that's what the employee had to do, and if he didn't do it, then maybe he loses his job? And so therefore, instead of following 75.1, Union Pacific said, you will follow our custom and practice. Now when he gets on the stand to testify, he says, I followed ABCD. And now you, in turn, say, oh, wait a minute. This is a game that we can play now since we didn't put any witnesses on. We can say his testimony doesn't follow 75.1, but he followed custom and practice. No, Your Honor, I don't think that's it at all. I think we didn't put any witnesses on, number one. It was an unwitnessed accident. He was the only person who saw it. And he testified that he himself complied in all material respects. We said we believe the evidence will show that he did, in fact, follow the rule. The other, so I don't see there's any game about this at all. In fact, Your Honor, the situation you talk about, that question, was actually not unlike the case the plaintiff's counsel cites in the brief, which is actually far removed from this case. The Ibarra case in the Eighth Circuit, Y-B-A-R-R-A. In the Ibarra case, plaintiffs testified that he performed the task in a manner that was inconsistent with the safety rule. He brought in a co-worker to testify that he performed it in a manner inconsistent. But they said that the railroad always looked past that. There's some custom practice that didn't comply with the safety rule. And then the railroad brought in a supervisor on a cross-examination. He said, I thought he was complying, but I did see him do it exactly the way they testified. There's nothing like that. Wasn't the theory of the plaintiff that through his expert, through Berg, that he did, in fact, comply with the safety rule, but it was not possible in doing that to avoid the injury that he had? No. I think if you look precisely at Berg's testimony, he said it was not possible to have performed it in the way the plaintiff described it. So at 731, I gave you that cite. At 758, Berg testified that the plaintiff could not keep his knees bent in performing the work. 751, 752, Berg testified the plaintiff could not keep his back straight. And at 939, Dragonich, the other expert, concluded that plaintiff's injury was a result of his rotation and bending at the same time in the performance of his job. You can argue all you want about how you want to interpret that evidence, but it was the jury who should have interpreted that evidence. Was there evidence that the plaintiff's negligence, however slight, contributed to cause the injury? Absolutely. You look at, in this case, it is far more preponderant, the evidence in this case, than in the Wilson versus Missouri Pacific case, the last of that trilogy of Supreme Court cases.  The plaintiff was descending a ladder, fell deep into his chest in mud, said he complied in all material respects with the safety rules. There was no expert testimony. And the court said there is sufficient evidence here for this case to be submitted on the issue of contributory negligence. There weren't alternative causation theories. I mean, if the Supreme Court in Wilson versus Missouri Pacific says, that case should have gone to the jury on contributory negligence, this case screams out that it should have gone to the jury on contributory negligence. Same thing with Erhan. Same thing with the other cases we've cited in our brief on the trilogy of Supreme Court cases. Is this a case where the plaintiff was given a job to perform, and the only way he performed his job was to violate the safety rules? Absolutely not, Your Honor. He testified that he complied with them in all material respects. But the expert witness says there's no way for a plaintiff to have done the job without violating the safety rules. Well, then he called the plaintiff's testimony into question, which was a basis for comparative negligence. Would that be an assumption of risk rather than contributory negligence? No, absolutely not, Your Honor. It would have been that he didn't comply with the safety rule. Exactly the types of arguments that were previously rejected in those cases coming out of the Fifth District. It should have been an assumption of the risk, not comparative negligence. This is a failure to comply with a safety rule. As Justice Lewis said, I believe, in the dissent in the Luther case, where he said, you know, it's no surprise that if there's negligence here, the employee whose negligence it was, the violation of the safety rule, is the plaintiff himself. So let's let the jury decide that. I do think, you know, if this Court is going to affirm this, this would be the first contributory case since this Supreme Court trilogy that I think is going to be held not to go to the jury. And I've done appeals a long time. Very seldom have I ever seen the highest court of the State of Illinois on multiple occasions within a short period of time issue opinions on the very same topic and reach absolutely consistent positions. And as I think Justice Lewis was right in one of his dissents, I think the Court is sending a message. Try to stop finding ways to avoid submitting contributory negligence to the jury in the MPLA cases. There are a whole host of waiver arguments that Plaintiff's Counsel makes, I think given the strength of the contributory negligence argument in this case. First of all, the affirmative defense of contributory negligence was raised in the initial answer. The substance of that affirmative defense was addressed by the parties. In the motion for direct verdict, the trial court clearly understood the defendant's position on what the contributory negligence argument was. There is no waiver for not putting it in an answer. It was there. If it weren't specific enough, the plaintiff should have moved to strike it and the defendant would have had an opportunity to replead. That, of course, was never done. It wasn't waived in opening statement. Defense Counsel said, I think the evidence will show that the plaintiff will testify that he complied in all material respects with the statement. That's what I think it will show. He did not say, we are not asserting comparative negligence at any point in time. He said, I will comment on Berg and Dragonich at the appropriate time. That's in closing argument. Well, he couldn't raise it in closing argument because by that time the direct verdict had been granted. So there wasn't any waiver in terms of not addressing it in closing argument. So I don't think any of the waiver arguments that Plaintiff's Counsel has advanced have any merit. In fact, what is it that one of Shakespeare's characters said about, he thinks he doth protesteth too much. Well, when you have six or seven waiver arguments, I think that's protesting too much and actually belies the strength of the contributory negligence argument. Two other errors, I think, contributed here. One is the failure to instruct the jury on the issue of whether there was a pre-existing condition or not. Again, Plaintiff's own witnesses, Dr. Treister, for example, testified that 803, 806, and 888, that a pristine disc is not likely to herniate and that herniation occurs where there is a traumatic episode coupled with already existing degeneration. Dr. Draganich himself confirmed that most people over the age of 20 experienced degeneration in their back. I think that was sufficient to let the jury consider whether, in fact, what happened was an aggravation of a pre-existing condition, which, of course, would result in a reward of lower damages. So if you think about it, two of the very traditional damage-reducing factors in FELA cases were taken from the jury in this case, one, the pre-existing condition, two, contributory negligence. The third, and it's not a damage-reducing factor, I'll be straight about that, it's more of a liability issue, is the fact that this individual, Mr. Evans, had performed this task for 11 months without incident prior to this day in question. Now, the trial judge granted a motion in limine on that point, and at one point his defense counsel was questioning the plaintiff about his experience on the job. He did say, I did this for 11 months, but he wasn't able to say, I never suffered an injury, and also he was precluded from arguing what the effect of that inference would be. Now, we have a section in our brief where we are arguing for a directed verdict that if you just accept the plaintiff's view, and there shouldn't have been any testimony that contradicts it or is based on assumptions contrary to it, that we should get a directed verdict. Well, the cases we cite there do talk about the fact that this job had been performed by this individual for a long period of time without incident. The impact of that evidence was never presented or never allowed to be presented to the jury through argument, nor was the ultimate effect of that testimony ever allowed to be put into evidence. That leads us to the excessive verdict argument. The verdict in this case, we believe, is excessive as a matter of law and excessive as a result of trial error, as we've indicated previously. There are a couple of damage-reducing factors that had the trial court ruled differently would have led to a far less confiscatory and excessive verdict in this case, or at least the jury should have been permitted to make that decision. But the excessiveness of it is indicated by a couple other indicia. Number one, the verdict of $500,000 for the present cash value of future medical expenses. First of all, the two physicians who testified on that point, Dr. Treister said he would have to speculate in order to testify that Mr. Evans would need future surgery, and Dr. Levin testified that right now I think it's more likely than not that he will not. The highest amount given for that surgery was $112,500. The plaintiff's counsel asked the jury for $300,000 of future medical expenses. The jury awarded $500,000. We think that is an indicia that they went beyond the evidence in this case. There was $4 million in non-economic damages, $1.5 million for past and future pain and suffering, $2.5 million for past and future disability. This Court is aware, I'm sure, of the Mikolaj Czech recently, where this Court in another division has begun to pay pretty serious attention to the excessiveness of non-economic damages, and we think that these flow just as readily from the jury's failure to pay attention to the evidence on the economic damages. And lastly, we attached the number of jury verdicts to our post-trial motion, and we know that you can't, that every case is different. You can't say one of those controls another, but we do think they supply a data point for this Court, several data points for this Court, to show what the necessarily flexible range of fair and reasonable compensation for a herniated disc injury in an FELA case is. We think that range is probably $200,000 to about $1,800,000. And on the excessive verdict, we think the Court can either take away the verdict as a whole on the basis of trial error, enter a new trial on damages only, or grant a conditional new trial, directing the plaintiff to accept a sum in a reduced amount, which we suggest at this point is at the level of $1.5 million, which is at the high end of that necessarily flexible range of fair and reasonable compensation. Unless the Court has any other questions, I will ask for the verdict in reverse. Counsel, your name again? Brian Schroeder, S-C-H-R-O-E-D-E-R. I work for one of the associate law offices. Okay. No, I just, I'm used to seeing him, so. Yeah, well, I'm sorry, not to distract attention, but his father's been hospitalized, and he's dealing with that. It's looking good, but he's got it, he's dealing with his father. First thing I want to say is while we've heard about this holy triumvirate of cases from the Illinois Supreme Court, one of them was Orion, which was a supervisory motion, as we all know. That doesn't give any basis for why the Supreme Court did what it did, so that decision really doesn't carry much weight here for the defense argument. And one case that wasn't mentioned by the defense is the Luther decision from the Fifth District, which came out in 1995, in which the Supreme Court denied leave to appeal. The significance of Luther is that in that case the Fifth District said, you cannot, as a defendant, get an instruction on contributory negligence simply on the basis of your wanting to disbelieve the plaintiff's testimony. That's what we have here. The defense has said, well, on cross-examination, the plaintiff said, he followed the rules, did everything he was supposed to. First of all, that's cross-examination. I'm sure the questions were rather slanted towards defense. Secondly, what it ignores also is that the plaintiff himself testified on page 706 that it was not possible for him to do this job by keeping the oil filter close to his body. As you know, he used a pitchfork, which itself was several feet long, to stab a oil filter in a bin that was several feet below his body. By definition, he cannot keep that object close to his body. Once he stabs it, it's away from his body. There's no way physically for him to keep it close to his body the entire time. He testified also on page 706 that it was not possible to do the job without bending and twisting. What the defense has done is simply pick and choose the testimony it wants to believe and say, well, he said he complied with the rules, so that's the end of the analysis. That's not the end of the analysis because that does not take into consideration the full context of the plaintiff's testimony, nor does it take into consideration the only expert testimony that was presented, Mr. Berg and Dr. Vergata, who both said it was impossible, not just, who said it was impossible to do the job the way the rules supposedly say it should be done. You cannot keep your back straight while you have to bend over a cart three feet below you to stab an oil filter. You cannot keep the object close to your body when, again, by definition, you're using a pitchfork, which is this long, this long, to stab the object. That testimony counts for something, and again, all the defense is saying is, well, we don't want to believe any of that, and their testimony is derivative of the plaintiff's. You can't do that. They presented no experts to say it could be done in conformity with Cardinal Safety Rule 75.1. The defense presented no expert to say you can do this job by keeping your upper body erect. Why? Well, because you can't. If you have to lean over the cart to see the oil filters, but then stab them with the pitchfork. No expert was presented by the defense to say you could do this job by keeping the object close to your body. Well, why? Because, again, using a pitchfork. That don't bend and twist at the same time, which is another one of the prongs of Cardinal Safety Rule 75.1. Again, no testimony that it was possible to do this task without bending and twisting at the same time. And, again, to beat a dead horse, they want to just take snippets of what they want you to believe and run with that, which I guess is what people who lose jury verdicts do, but under the law it's not permissible. The defense made a point about Mr. Burke's testimony in response to a question about what did the plaintiff do that was negligent. They talked about bending the knees. If you look at his testimony on pages 759 and 760 of the record of the trial transcripts, Mr. Burke explains that he was distinguishing and talking about bending knees in the context of squatting. And he also said that squatting was not something that could be done in this case because, again, if you squat, you're now even with or underneath the top edge of the cart that holds the oil filters. So what the defense is doing is mischaracterizing what Mr. Burke was saying. He was not saying the plaintiff was at fault for not bending his knees. The point was he could not bend his knees to do this task because if he did and then leaned over, the biomechanics of leaning over the bin to get to the oil filters necessarily means you have to straighten your knees. So in context, that's what he was saying. There was no evidence, and the bottom line here is everything that was supposedly done wrong, if you look, again, at Safety Rule 75.1, the things it says, and you look at Irwin, which is Ann Wilson, the Supreme Court case that the defense even cites, contributory negligence is an act by the plaintiff that adds new dangers to the dangers, if any, that already exist in the task at hand. Nothing the plaintiff did added new dangers. The dangers that were there were there because of the way the railroad structured this task with the plaintiff on a platform standing over a bin, using a pitchfork to have to stab oil filters that weighed 8 to 12 pounds that were 2 to 3 feet beneath him and then have to turn around and put those filters in a crusher. He did the task, as even the defense says, in opening and during trial and even now. He did the job the way he was supposed to do it. Well, if there's dangers in what he did and he did what he was supposed to do, the dangers are not because plaintiff added them. The dangers are there because they were inherent and endemic to the task. And that is not what contributory negligence is. That is assumption of the risk, and assumption of the risk, as we know, is not a defense in a FELA case. And that also is why the Circuit Court correctly granted the directive for verdict on contributory negligence. There was no evidence of a rule violation. Irwin and Wilson, Irwin was a tripping rule. The plaintiff was walking around in the dark and he tripped and stumbled. And there was a rule that said take precautions when you're walking so that you don't have a tripping hazard. Here we have a rule that wasn't violated by the plaintiff adding dangers. There's nothing he did that added to the dangers already present. In Wilson, the rule was take precautions when you're getting off of equipment so that you don't get hurt. And the plaintiff there stepped off the train. He looked at the ground, thought it was fine, stepped off, and then got stuck in some mud. It was fair in that case to say, well, maybe you didn't look well enough or closely enough. Or in Orhan, maybe it could be said you didn't have a flashlight. You should have done these other things to make sure that there were no tripping hazards. In our case, first of all, there was no violation of Rule 75.1 by the plaintiff himself. The violations of any were endemic to the task. And, again, that takes Orhan and Wilson out of the equation. This case is Luther directly on point, on all fours, in which the Supreme Court denied leave to appeal. And the Supreme Court denied leave to appeal in Luther before the Wilson decision. So if the Supreme Court thought there was some big miscarriage of justice, it would have acted. In Luther, it didn't. The reason is because Luther was completely distinguishable from Orhan and from Wilson. At trial, the experts said that they were unclear whether or not there would be a need for any future medical treatment. I think the plaintiff asked, in closing argument, for $300,000. Instead, we got $500,000 for future medical treatment. Is this an indication that perhaps the damages here are excessive? No, Your Honor, it is not. First of all, the total amount of damages the plaintiff asked for was about $5.43 million. The plaintiff got about $5.36 million. So the plaintiff, globally, got less in damages than he asked for. So I submit that that is, first off, one indication that this verdict is not wildly excessive. But more directly to your question, the testimony from the medical doctors were that the plaintiff had already had three serious surgeries and could very well need additional surgeries in the future. How many and when and what nature they would be was not something they could identify with exactitude, but they were all confident in saying, he probably will need some sort of surgical intervention down the line. We asked for $300,000. It was within the jury's prerogative to say, he's already had three surgeries. His back is a mess. He's going to need several more if he's already had three. He's going to have a 35, 45-year life expectancy. Given that, given his prior surgical history, his life expectancy, the serious nature of his condition, the debilitating nature of his condition, the amount of $500,000 is not wildly excessive. And the testimony of the plaintiff's doctors was not speculative in that they said, I have no idea what, if anything, he's going to need in the future. If you read the trial transcripts, what Dr. Treister was saying is, right now, today, I don't know if he does, but I can say, over time, he will. So our answer, again, is no. There's no excessive nature in the verdict for projected future medical expenses. Along those same lines, while we're talking about the medical expenses, the instruction on aggravation of a preexisting condition, we would submit that the defense is taking an overly general approach to this. If you look at the Boykin case, which we cited in our briefs, it's not enough simply to say we have degenerative conditions, so therefore I should get a preexisting instruction. Everyone is probably over, every adult has degenerative conditions of some sort, which is what the plaintiff's experts said. What was missing, however, is evidence from either the plaintiff's experts or any medical experts that the defense wanted to retain, which it chose not to do, that the specific degenerative conditions that Mr. Evans had were related to his injury that he suffered when he was doing this event. Without that, without a link between his, whatever this vague nebulous preexisting condition was, without some sort of evidence linking that condition to the injuries that Mr. Evans suffered, you cannot get a preexisting condition instruction. And that's what the defense is overlooking, and that's what the Circuit Court correctly noted when it said you will not get this instruction. There's no evidence of it. And again, just to say people have bad backs or bad arms, what that really means is preexisting instructions should be given in every single case because as our own experts admitted, every adult has some sort of degenerative condition. It's just the nature of being an adult. But that's not enough. The law says it's not enough. The defense did not link any preexisting condition to this particular injury. They cannot get that instruction. The defense also talks about evidence that the plaintiff had been doing this job for 11 months without any prior injury. First of all, they did get that in. The plaintiff didn't say, I've been doing this for 11 months, same job. They got in with their claim that they couldn't get in. So on that basis alone, there's no error. But moreover, what they're trying to do is say since he did the job for 11 months and wasn't injured, we had no reason to think that there was a dangerous condition here. However, as we cited in our briefs, the Coleman case, among others, says that violation of a safety rule itself can show negligence because of a foreseeability of a risk of harm. And as I've talked about and the briefs talk about, Cardinal Rule 75.1 has five particulars, four of which the plaintiff and his experts testified could not possibly be met given the way this task was structured in this case. Given that, and the railroad's own, the preamble to Rule 75.1 says, violations of this rule can cause serious personal injury. That is proof that the railroad knew that the way it was having its employees do this task posed a danger of injury because you could not keep your back erect. You could not keep the object close to your body. You could not bend without twisting at the same time. And there's one more. Give me a moment and I'll read that to you as well. Lift smoothly with no jerking movements. Given the way the railroad, again, structured this task, it could not be done in a way that did not pose a danger because that's the way the railroad structured the task around it. It is not something the plaintiff did himself. And again, with future medicals, again, I'm going to go back to that and I think then I'll address waiver briefly and be done. The future medicals, again, if you look at the plaintiff's overall condition, he's on pain medicine on a daily basis. He was undergoing pain management therapy. There was extensive, substantial testimony about his condition, his daily pain. One of the surgeries was a spinal fusion that, in fact, failed, which caused a need for a third surgery. There was evidence that he was unable to work again for the railroad. In fact, maybe not even be able to work at all given his physical limitations. All this was something the jury heard and took into consideration and again thought this man is, relatively speaking, a young age. He's got at least half of his life to live yet, if not more, hopefully. He's going to need a lot of work. He's going to need a lot of help. And to say that this is unfair just because it's too high is really what it comes down to. There was overwhelming evidence that he had a very horrible debilitating condition and to suggest that after having had three surgeries, $500,000 for future medicals is wildly excessive is really itself not true. The waiver arguments that we made, I'm going to stand on them. It's not so much an issue of waiver in opening statement, but it shows what really this case comes down to as well, is the defense made a deliberate, calculated decision here. The defense chose not to call any witnesses. The defense chose not to present any experts. Their strategy was what they said in opening, is everything was done properly. It's a shame that this man got hurt, but it's nothing we did wrong. The evidence came out to show that that fact was not the case and now that they lost and that strategy blew up in their face, they're now crying all these reasons that this trial was horribly wrong. They chose, they picked a strategy. Their strategy was the rules were followed, accidents happened, but don't look at us. That strategy backfired. That's not enough for you to overturn a jury's verdict. They got what they wanted. They presented their theories. They got what they wanted, what the evidence and law allowed, and they can't now complain about it because they don't like the fact that the jury came back with a $5 million verdict. Which, lastly, the defense is trying to have it both ways when they say, you can't compare verdicts, but we've attached some verdicts that make it look like this verdict was completely out of control. Can't do that. Also, if you look at their brief, they talk about the three or four verdicts that they mentioned. They do it in not even a page. Completely glossing over all the facts of this case, the extensive testimony, both medical and personal, from the plaintiff, his wife, his doctors, about his injuries, his pain, his surgeries, what he can't do, and nothing about what any of these other cases are about other than, well, hurt back, you got $200,000, so we think that's good enough here. No way. First of all, it's against the law of Illinois to compare verdicts, but if you want to compare what they're trying to ask you to compare, there's no basis for any legitimate comparison because there's no basis that the defense presents that makes any of these verdicts they're throwing out remotely comparable to what happened in this case. For all these reasons, and unless there are any questions, we would ask that the verdict be affirmed in its entirety. There was no prejudice. There was no error. Thank you very much. Thank you. The court has another case, so I'll be brief on rebuttal. Counsel indicated that both the plaintiff and the plaintiff's experts testified that four of the five conditions in Cardinal Safety Rule 75.1 could not be complied with. That is inaccurate. If you look at the testimony from the plaintiff, unequivocal, direct, 672 to 675, he walked right through them and he said he did all the things that were in there. You talk about strategies? The fact of the matter is, had there not been an expert chosen by the plaintiff to testify on biomechanics and safety, this case wouldn't have gotten to a jury. The plaintiff's testimony exonerated the realm. The plaintiff's brought in two experts who undermined the assumptions of They also then moved for a directed verdict on comparative negligence. It's that testimony, which they needed to get to the jury, that actually supports the contributory negligence instruction in this case. If they wanted it all or nothing, it would have been solely on the basis of the plaintiff's testimony. But once you call that into question with expert testimony, the contributory negligence absolutely should have gone to the jury in this case, and all of those cases say that. The verdict is excessive. The jury was inattentive to the evidence. That future medical, I mean, that's wrong in two respects. Neither expert testified to a reasonable degree of medical certainty that he was likely to need future surgery in the first instance, and then gave very specific dollar amounts, which the jury blew through. So we think that for all of those reasons, Your Honor, this case should be remanded for a new trial, where contributory negligence, preexisting conditions, by the way, there's plenty of evidence that it came from their own medical factors, and the jury should have been permitted to consider. And when it does, Your Honor, I think the trial should take into account the alternative theories and the alternative defenses, because the defendant was not allowed to present here. Thank you. Thank you.